PICKEM *v.* PICKEM.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—AMENDMENT OF PLEADING.

Decree granting plaintiff divorce on ground of extreme and repeated cruelty under bill charging only desertion and nonsupport, without requiring an amendment of the bill *held*, not prejudicial to defendant who himself had sought divorce on ground of extreme and repeated cruelty since he must have anticipated that such field of inquiry would be opened up, his attorney cross-examined plaintiff at length in the field of extreme and repeated cruelty, and record indicates that defendant could not have met the testimony on the part of plaintiff more fully than he did had plaintiff's bill included such ground of complaint.

2. APPEAL AND ERROR—AMENDMENT OF PLEADING—EVIDENCE.

If necessary a bill of complaint might be amended in Supreme Court to conform with the proofs in the case (Court Rule No. 72, § 1 [a] [1945]).

3. DIVORCE—EXTREME CRUELTY—EVIDENCE.

In suit for divorce, evidence sustained decree granting wife divorce on ground of extreme and repeated cruelty and denying husband divorce on such ground.

4. SAME—DIVISION OF PROPERTY—SUPPORT OF CHILDREN—ATTORNEY FEE—COSTS.

Decree awarding wife $4,000 home of the parties upon payment of $800 to husband, awarding $7.50 per week for support of 13-year-old daughter whose custody was given wife until daughter attained age of 17 years, ordering husband to pay fee of $100 to plaintiff's attorney, awarding $450 to defendant from payment of mortgage on out-of-state property, is not disturbed on appeal, and although decree is affirmed, no costs are awarded plaintiff in view of liberality to her in property settlement.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 14, 1947. (Docket No. 13, Calendar No. 43,496.) Decided April 17, 1947.

Bill by Mary Pickem against Mathew Pickem for separate maintenance. Cross bill by defendant against plaintiff for a divorce on ground of extreme and repeated cruelty. Bill amended so absolute divorce could be granted. Decree of divorce for plaintiff. Defendant appeals. Affirmed.

*Joseph E. Arsulowicz,* for plaintiff.

*Irving H. Smith,* for defendant.

NORTH, J. As originally filed plaintiff's bill of complaint was for separate maintenance; but at the hearing in open court she elected through her attorney to "ask for an absolute divorce rather than a bill of separate maintenance," and her motion in this respect was granted. The bill of complaint alleged desertion and nonsupport. Defendant filed an answer and cross bill charging plaintiff with extreme cruelty in consequence of which he sought a divorce from the bonds of matrimony. Plaintiff answered the cross bill and denied the material charges therein contained. After hearing in open court the circuit judge granted plaintiff a decree of divorce on the ground of extreme and repeated cruelty and decreed a property settlement between the parties. Defendant has appealed.

In behalf of appellant it is urged that the trial court was in error in granting plaintiff a divorce on the grounds of extreme and repeated cruelty since the bill of complaint charged only desertion and nonsupport. In the early stage of taking the

proofs defendant's attorney objected to any testimony in behalf of plaintiff tending to establish extreme and repeated cruelty on the part of defendant. In this connection defendant's attorney stated to the court:

"If as they say they want to amend the bill when the proofs are in then we have to have an extension of time to answer that and to prepare for trial on the ground of cruelty. * * * I want the record to show distinctly that we are not prepared to meet any allegation of cruelty as grounds for divorce."

The testimony to which objection was made and further testimony tending to prove extreme and repeated cruelty on the part of defendant was received. While the procedure in the particular noted was somewhat irregular, we do not think it resulted in material prejudice to the defendant for the following reasons. Defendant in his cross bill had charged plaintiff with extreme and repeated cruelty and in consequence thereof must have anticipated that this field of inquiry would be opened at the trial, because plaintiff would be in a position to offer testimony of like misconduct on the part of defendant in meeting his claim to relief on his cross bill. Further the record discloses that defendant's attorney cross-examined plaintiff at length in the field of extreme and repeated cruelty and to quite an extent developed the testimony beyond that given by plaintiff on her direct examination. Practically all the testimony tending to prove defendant guilty of extreme and repeated cruelty was given by plaintiff. There is no showing that defendant could have more fully met this testimony on the part of plaintiff if that ground of divorce had been alleged in her bill of complaint; nor was any motion made by defendant's attorney at the close of

the proofs for a continuance to enable defendant· to more fully meet plaintiff's testimony as to her claim of extreme and repeated cruelty on the part of defendant. The trial judge seems to have disposed of the case under the assumption or impression that plaintiff's bill of complaint in the respect ·under consideration had been amended. In his opinion he said: "Plaintiff's bill is based.upon alleged cruelty of the defendant prior to his commitment (to the Kalamazoo State Hospital) and of his refusal and neglect to provide for her and the ·infant daughter since his release." We are of the opinion that at the hearing of this case defendant was in no way prejudiced by the above noted state of plaintiff's pleadings. If it were deemed necessary her bill of complaint might well be amended in this Court to conform with the proofs ·in the case. See Court Rule No. 72, § 1 (a) (1945).

These parties were married in June, 1919. , For sometime ·thereafter they lived in Wisconsin, but came to the city of Grand Rapids to reside approximately 19 years prior to the hearing in the circuit court—February 7, 1946. Three children were born of the marriage. At the time of the trial the oldest son was 26 years of age and married, the next was a son approximately 20 years of age and was also married. The youngest was a daughter about 13 years of age and in the 8th grade at school. The record is convincing that each of these parties has been hard working and frugal. During practically all of the marriage relation plaintiff has either worked outside of the home or has taken in washings, roomers,. and sometimes boarders. Apparently domestic trouble did not start until 1937 or 1938, and this resulted in consequence of defendant's suspicion and jealousy of his wife in her relations with one or more of the male roomers in the

household. Defendant charged his wife with infidelity and in consequence of his suspicions caused one or two of the male roomers to leave the home. Defendant's attitude in this particular became so deep-seated that, according to plaintiff's testimony, he assaulted her, threatened to kill her, and finally in July, 1939, defendant was committed as an insane person to the Kalamazoo State Hospital. He was confined there until October 4, 1943, and it was not until April, 1944, that the probate court judicially determined defendant had been restored to sanity.

Immediately upon defendant's release he secured employment in the city of Kalamazoo with the Standard Gas & Light Company and was so employed at the time of the trial. It appears from the record that plaintiff did not know of defendant's release or his employment in Kalamazoo until some time in 1945, and that defendant's first visit after his release to his former home in Grand Rapids was the last day of December, 1945. It was not until after this suit was started that defendant made any contributions out of his earnings, which were approximately $28 per week, towards the support of his wife or minor daughter; but beginning in June, 1945 for a period of six months defendant sent to his wife $10 monthly. However, defendant made his minor daughter a present of a $25 war bond and on one occasion gave her $45 with which to buy a bicycle.

The situation as above presented was somewhat modified by the following. These parties held a mortgage on property in Wisconsin which was payable at the rate of $25 per month; and such payments were received by plaintiff during the period following defendant's commitment to the State hospital until early in 1945, when the unpaid bal-

ance of $900 on the mortgage was paid, $450 to plaintiff and the remaining $450 was deposited in a bank to abide the outcome of this suit.

At the time of defendant's commitment the parties were purchasing on a contract the home in which they resided. The purchase price was $1,700 and at the time defendant was committed to the Kalamazoo State Hospital $600.15 remained to be paid. Prior to commencing this suit plaintiff had paid the balance of the contract price and a deed to the premises was taken in the name of the parties hereto as joint tenants by the entirety. The property has been materially improved, some of such improvements having been made by plaintiff after defendant was committed; and the testimony indicates that the fair value of the home property is now approximately $4,000. It should be noted that at the time of defendant's commitment the youngest child of these parties was 5 or 6 years of age and the younger son approximately 13 years of age. Plaintiff testified that the $25 monthly mortgage payments above noted were used in completing payment of the home property and in support of the family. In recent years plaintiff has worked quite continuously at employment outside of the home; and it is with means so acquired (including the $25 monthly payment) that she completed payment of the home property, made improvements thereon, and supported the family prior to commencement of suit.

Without attempting to review the testimony in detail, it is sufficient to note that the record sustains plaintiff's contention not only that the defendant committed physical assaults upon plaintiff, but that he persistently falsely accused her of infidelity, and that he has continued such charges in the allegations in his cross bill and by his own testimony at

the hearing of the case. And for upwards of two years after his release from the Kalamazoo State Hospital he failed to make any substantial contribution towards the support of his wife or children, one of whom was comparatively young at that time, notwithstanding defendant during the period was earning a substantial income; and he still persists in living apart from his family, although he explains his conduct in this regard by asserting he has been advised by the doctors at the Kalamazoo State Hospital that it would be better for him to live apart from his family. While testifying in this case he said: "If my wife did ask me to come back I would not go back;" explaining in this particular that he thought if he did so his life would be in danger, which latter assumption is not justified by the record. In concluding that the trial court was correct in granting plaintiff a decree of divorce, we have not overlooked defendant's testimony to the effect that prior to his going to the State hospital his wife scolded him, nagged, called him vile names and refused to cohabit with him. Obviously, and we think justly, the trial court gave little, if any, credence to defendant's testimony.

Appellant also complains of the property settlement decreed by the trial judge. In brief the record discloses that defendant at the time of the trial possessed approximately $650 in cash or government bonds. The court decreed defendant should have the $450 hereinbefore mentioned as the balance of the payment of the Wisconsin mortgage, and that plaintiff should pay to defendant $800. The testimony shows defendant is steadily employed at approximately $28 per week. As to the plaintiff the decree provided she should have the household furniture and furnishings, and upon the payment of $800 to defendant plaintiff should be-

come the sole owner of the home property. Defendant was required to pay an attorney fee of $100 to plaintiff's attorney. The decree also required defendant to pay $7.50 weekly towards the support and maintenance of his daughter until she should attain the age of 17 years, her custody being given to the plaintiff. We find no reason in this record for disturbing the disposition made by the trial judge of the property rights of these parties.

The decree entered in the circuit court is affirmed; but since we are of the opinion that the property settlement decreed by the trial court was amply liberal, to plaintiff, no costs will be awarded on this appeal.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.